UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-21537-FAM

KARL M. BROBERG, Individually, and
As Administrator of the Estate of
SAMANTHA JOYCE BROBERG,

    Plaintiff,

vs.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES,

    Defendant.
_____/

## DEFENDANT'S *DAUBERT* MOTION TO STRIKE PLAINTIFF'S EXPERTS

Defendant Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival"), moves to strike Plaintiff's expert witnesses, and states:

### Introduction

Plaintiff brings this action under the Death on the High Seas Act ("DOHSA") after his wife, Samantha Broberg, fell overboard the Carnival *Liberty* during a pleasure cruise. In the early morning hours, Samantha Broberg sat on the railing of an exterior deck and feel backwards off the ship. She was never found. In broad strokes, Plaintiff contends that Carnival was negligent in over-serving Samantha Broberg alcohol and in failing to detect her fall overboard and in the subsequent search and rescue for her. This case is relatively straight-forward. The issues turn on Carnival's alleged notice and whether the parties' conduct was reasonable under the circumstances.

Despite this, Plaintiff has disclosed seven[1] retained expert witnesses. Simply put, Plaintiff's expert witnesses will do nothing but needlessly complicate this case. Their testimony is either unhelpful or unreliable. Five of Plaintiff's experts all essentially deal with the same topic: alcohol service and cruise safety. Plaintiff has disclosed an economist with unreliable damages opinions. In sum, this Court should strike Plaintiff's expert witnesses as outlined below.

### Plaintiff's Experts

Joellen Gill is a human factors engineer and safety and risk management expert. [Plaintiff's Expert Witness Disclosure, p. 1, attached as Exhibit 1]. According to Plaintiff, "Gill will testify that Carnival Cruise Line failed to implement and/or enforce a proper and effective safety and risk management program." [Exhibit 1 p. 2]. Gill will testify that "Carnival Cruise Line was clearly aware of the hazards posed by overserving their guest, and the hazard associated with persons overboard, yet failed to develop and/or implement and an effective safety program[.]" [Exhibit 1 p. 2]. While it would seem that drinking too much and falling overboard are obviously problematic, Gill's expert opinions make this simple proposition as complicated as possible with industry jargon.

Gill intends to testify that the hazards at issue in this case are the overconsumption of alcohol and "exposure to fall overboard." [Exhibit 1 Exhibit A p. 5]. Gill contends that Carnival is aware of the risk of overconsuming alcohol based on his review of the discovery in this case. He also relies on Plaintiff's dram shop and alcoholic beverage regulation expert, John Conklin, for this proposition. [Exhibit 1 Exhibit A p. 5]. Gill contends that Carnival has not clearly identified that falling overboard is a hazard. [Exhibit 1 Exhibit A p. 5]. Gill relies on Plaintiff's cruise industry and tourism expert, Ross Klein, for support. [Exhibit 1 Exhibit A p. 5]. Gill

---

[1] Plaintiff also disclosed a psychiatrist, but has indicated that he does not intend to call same now that he has abandoned his intentional infliction of emotional distress claim. [ECF No. 42].

concludes that Carnival did not have a proper and effective safety and risk management program to combat these apparent risks. [Exhibit 1 Exhibit A p. 11].

As mentioned above, Conklin is Plaintiff's dram shop and alcoholic beverage regulation expert witness. [Exhibit 1 p. 3; Exhibit 1 Exhibit E]. His testimony, at bottom, seeks to explain why Carnival was on notice of Samantha Broberg's visible intoxication such that Carnival was negligent. His opinions are legal conclusions based on his interpretation of the discovery. [Exhibit 1 Exhibit E p. 15]. Conklin will testify that Carnival "created a dangerous condition when they served alcoholic beverages to Samantha Broberg, after she exhibited visible signs of intoxication" such that Carnival's conduct was negligent. [Exhibit 1 p. 3].

Continuing the theme, Plaintiff's next expert witness, Michael Whitekus, intends to opine regarding alcohol and intoxication. He is a toxicologist and drug safety expert. [Exhibit 1 p. 4]. Whitekus intends to testify that based on his experience, Samantha Broberg was likely intoxicated at the time of her fall. [Exhibit 1 p. 5]. Like Plaintiff's other alcohol-related experts, he simply reviewed the discovery in this case. He intends to extrapolate what her likely blood alcohol content ("BAC") was at the time of her death and how she would have appeared at this time based on what he pegged her BAC at. [Exhibit 1 p. 5].

Kyle McAvoy is a marine safety expert. [Exhibit 1 p. 5]. Boiled down, McAvoy believes that Carnival was negligent because it stacked deck chairs near the ship's railing. Intoxicated passengers can use same to climb overboard and that Carnival should take steps to avoid allowing its passengers to climb on deck chairs. At the same time, there is nothing wrong with the railings themselves. McAvoy will testify that Carnival's "placement of lounge chairs in the vicinity of the Carnival Liberty deck railing exposed Samantha Broberg to the hazard of falling overboard." [Exhibit 1 p. 6]. McAvoy will further testify that Carnival's "routine procedure of

either allowing, or purposely placing deck lounge chairs adjacent to the ships outboard open deck railing, deprived Mrs. Broberg of the protection she needed by industry and regulation which was a cause of her death[.]" [Exhibit 1 p. 6].

Ross Klein is next up. Klein is a sociologist that holds himself out as a cruise industry and tourism expert. [Exhibit 1 p. 6]. Klein plans to testify that Carnival "has been aware of the problem of persons overboard from its ships" that Carnival gives guests an elevated sense of safety onboard its ships, and that Carnival mispresents the risk of going overboard from a cruise ship. [Exhibit 1 p. 7]. He believes Carnival should be more proactive in preventing person overboard incidents. [Exhibit 1 Exhibit O p. 9]. He believes "the most obvious and simplest method is to communicate to passengers about onboard risks and strategies for maintaining personal safety." [Exhibit 1 Exhibit O p. 20].

Lastly, Plaintiff disclosed Bernard Pettingill, an economist. [Exhibit 1 p. 9]. Pettingill intends to opine on Plaintiff's DOHSA damages, including past burial expenses, loss of support, and loss of household services. [Exhibit 1 p. 10]. Certain of his opinions should be stricken. In particular, Pettingill opines that Samantha Broberg provided Plaintiff and the family over $1,100,000, based on her lost wages. But Samantha Broberg's salary was paid by a corporation wholly owned by Plaintiff. These damages are illusory because Plaintiff already received same whether through Samantha Broberg or a distribution from his corporation. Carnival has also moved for partial summary judgment on this aspect of Plaintiff's DOHSA damages.

## **Memorandum of Law**

*Daubert*[2] requires the district court to act as "gatekeeper to insure that speculative and unreliable opinions do not reach the jury." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005). When analyzing a challenge to expert testimony under *Daubert*, a court

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

must determine whether a proffered expert has employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). A trial court, in determining the admissibility of expert testimony under Rule 702, must conduct a "rigorous three-part inquiry," considering:

> whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). As outlined below, Plaintiff's expert witnesses each fail one or more of the relevant *Daubert* factors as outlined by the Eleventh Circuit.

**1.    Plaintiff's Five Safety/Alcohol Experts—Gill, Conklin, Whitekus, McAvoy, and Klein—should be stricken as expert witnesses.**

If expert testimony is supposed to be outside the understanding of the average lay juror, then Plaintiff's expert witnesses have clearly succeeded. They have so thoroughly and needlessly complicated the straight-forward issues in this case that no one can glean exactly what they intend to testify upon. Plaintiff is going to bring in five separate experts to tell the jury that someone should not drink too much and climb onto a cruise ship's railing, and that this is somehow Carnival's fault. Their testimony is unhelpful and unreliable. The jury can just as easily hear testimony and determine whether Samantha Broberg was visibly intoxicated such that Carnival should have done something differently and whether the parties (Samantha Broberg and Carnival) acted reasonably under the circumstances. The jury can then determine how much fault, if any, to attribute to either of them. These experts make the jury's task harder, not easier.

An analogous situation arose in *Torres v. Carnival Corp.*, 2014 WL 3548456 (S.D. Fla. July 17, 2014), where another court in this district struck an expert witness in a cruise line negligence case for needlessly complicating a case. *Torres* was a trip-and-fall case involving a cruise passenger. *Id*. at *1. The passenger sought to introduce human factors engineering testimony regarding the cause of the fall. *Id*. at *2. The expert sought to testify that when walkways are improperly designed, pedestrians may be exposed to dangerous conditions. *Id*. He also attempted to testify that changes in lighting require the eye to adjust to same which may prevent a person from detecting hazards. The expert also sought to opine on the sufficiency of cones and warnings around the alleged tripping hazard.

The district court struck the expert witness as unhelpful because the "testimony unnecessarily complicates the case." In particular, the expert sought to opine on walking and lighting; things that all people are accustomed to. *Id*. Any juror could already draw their own conclusions on why the passenger tripped and fell. The court continued that "[a]t best, [the expert's] testimony would be superfluous. At worst, the testimony would confuse the jurors." *Id*. at *3.

Returning here, the five safety/alcohol experts all needlessly complicate what should be a simple case. Gill intends to offer human factors-type opinions explaining how Plaintiff fell, Conklin intends to offer opinions on Plaintiff's visible intoxication, Whitekus intends to offer opinions on Plaintiff's theoretical BAC, McAvoy intends to offer opinions that Carnival should not have deck chairs near railings, and Klein intends to offer opinions that passengers are given a false impression of the number of passengers that go overboard from cruise ships. None of this testimony is helpful. The jury here has to essentially determine whether the parties' conduct was

reasonable under the circumstances. They do not need five overlapping experts to make these determinations, and will surely be hindered in their ability to do so by these experts.

The experts' unhelpfulness ties into the next argument against them. Since the liability issues in this case really do not need expert testimony at all, Plaintiff's experts do little more than review the discovery in this case to provide their own interpretation or spin for Plaintiff. Proffered expert testimony generally will not assist the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. To this end, "while an expert may testify as to his opinions on an ultimate issue of fact, [ ] he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler*, 49 F. Supp. 3d at 1122 (quoting *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009)). "Such expert opinion is not helpful and the risk is too great that the trier of fact will be confused or place undue weight on such an opinion." *Id*. at 1124. Expert testimony couched in terms of legal conclusions is not helpful to the jury and may result in jury confusion. *Id.*

These experts' opinions are littered with impermissible legal conclusions. They each intend to opine regarding Carnival's notice of Samantha Broberg's intoxication, the dangers of drinking alcohol to excess, and the danger of falling overboard. These determinations should be made by a jury, not at the direction of an expert witness. *Id*. They intend to opine how Carnival was supposedly negligent and what it should have done. These opinions are impermissible.

To arrive at their opinions, these experts essentially reviewed the discovery in the case, applied it to their experience, and came up with legal conclusions. This is not good enough. experience standing alone is not "a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261. "The trial court's gatekeeper function requires more than simply 'taking the expert's word for it.'" *Id*. "If admissibility could

be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practicable purposes, subsumed by the qualification prong." *Id*. The expert cannot rely on "experience" without explaining in detail how the experience and other materials consulted support the opinion rendered. *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014); *see also Birge ex rel. Mickens v. Dollar Gen. Corp.*, 2006 WL 5175758 (W.D. Tenn. Sept. 28, 2006) (surveying caselaw of successful *Daubert* challenges of experience-based "security experts.").

Certain of the alcohol/safety experts are infirm for other reasons. For instance, Gill's opinions are impermissibly stacked on top of the opinions of Conklin and Klein. An expert is typically not permitted to rely on excerpts from opinions by other experts. *American Key Corp. v. Cole National Corp.,* 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *Alphamed Pharmaceutical Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F.Supp.2d 1319, 1357 (S.D. Fla. 2011). Expert testimony is inadmissible "where the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective [] prediction was reliable, other than the fact that it was the opinion of someone he believed to be an expert." *TK–7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir. 1993).

McAvoy contends that Carnival was negligent by having and stacking deck chairs near its railings because intoxicated passengers can use same as a stepping stone to climb overboard. Not only are these opinions ridiculous, but there is no basis supporting them. Under general maritime law, a shipowner owes its passengers reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959). It is well-established that a cruise line is not liable to passengers as an insurer; there must be some failure to exercise

due care before liability can be imposed. *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64 (2d Cir. 1988). Expert testimony opining that a party should have followed inapplicable or non-existent industry standards, without a sufficient basis for doing so, is highly likely to confuse and mislead a jury. *Hamilton v. Anderson*, 2010 WL 95440637, *6 (D.N.M. June 18, 2010). Such testimony holds the defendant to a higher standard of care than is required by law, unfairly prejudicing the defendant. *Id*. McAvoy cites to industry regulations regarding railings, but there is nothing wrong with Carnival's railings. And there is certainly no industry standard applicable to the stacking of deck chairs such that passengers will not climb overboard or the blatant misuse of ordinary objects.

McAvoy's testimony on deck chairs, Whitekus' testimony on Samantha Broberg's theoretical BAC, and Klein's testimony regarding the "false sense of security" Carnival gives its passengers is also pure speculation. Expert testimony cannot be based on speculation. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568 (N.D. Fla. 2009). In sum, these expert witnesses should all be excluded.

**2.    Pettingill's expert opinions on loss of support damages should be stricken.**

As outlined in Carnival's partial motion for summary judgment, Carnival is entitled to judgment on loss of support damages. Pettingill intends to opine that Plaintiff suffered loss of support damages as a result of Samantha Broberg's death based on her lost income and wages to the family.

The decedent's personal representative may maintain an action "for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative" for "the fair compensation for the pecuniary loss sustained[.]" *Id*.; 46 U.S.C. §30303. "In the DOHSA setting, it is well established that recoverable damages include loss of support, loss of services of the decedent, loss of nurture,

guidance, care and instruction, loss of inheritance, and those funeral expenses actually paid by the dependents." *Rohan ex rel. Rohan v. Exxon Corp.*, 896 F. Supp. 666, 672-73 (S.D. Tex. 1995) (citing Thomas J. Schoenbaum, Admiralty and Maritime Law §7-2 (1987)). DOHSA actions do not allow the decedent's estate to recover lost future wages in and of themselves. *Atl Sounding Co, Inc. v. Townsend*, 557 U.S. 404, 419 (2009) (citing *Miles v. Apex Marine, Corp.*, 498 U.S. 19 (1991)). They must be proven as part of the lost support or inheritance damages. *Rohan*, 896 F. Supp. at 673.

According to Pettingill, Plaintiff's loss of support damages are a dollar-for-dollar match of Samantha Broberg's wages extrapolated over the course of the remainder of her life. But she was employed by one of Plaintiff's corporations that he owned. She was in a non-revenue generating position and her position was simply eliminated after her death. Plaintiff already had the money that was paid out to Samantha Broberg as a salary. Any loss of support is circular and illusory. Pettingill should not be permitted to offer expert opinions that Plaintiff suffered loss of support damages based on the lack of Samantha Broberg's salary.

## Conclusion

This Court should strike Plaintiff's expert witnesses. Plaintiff has five inter-related experts that intend to testify regarding liability issues for alcohol and safety. Their testimony will needlessly complicate and confuse the issues in this case. The jury is more than capable of making all the decisions that Plaintiff's expert witnesses hope to make for them. Plaintiff's expert economist should be partially precluded from offering any testimony regarding Plaintiff's alleged loss of support damages because they do not exist. This Court should strike these experts.

## S.D. Fla. L.R. 7.1 Certification

CASE NO.: 17-21537-FAM

I hereby certify that the undersigned conferred with opposing counsel in a good faith effort to resolve the issues raised in this motion, but was unable to do so.

>Respectfully submitted,
>
>MASE TINELLI MEBANE & BRIGGS, P.A.
>*Attorneys for Defendant*
>2601 South Bayshore Drive, Suite 800
>Miami, Florida  33133
>Telephone:  (305) 377-3770
>Facsimile:   (305) 377-0080
>
>By:   /s/ *Cameron Eubanks*
>         CAMERON W. EUBANKS
>         Florida Bar No. 85865
>         ceubanks@maselaw.com
>         rcoakley@maselaw.com
>         filing@maselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2018, that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>By:   /s/ *Cameron Eubanks*
>         CAMERON W. EUBANKS

## SERVICE LIST

**Robert L. Gardana, Esq.**
ROBERT L. GARDANA, P.A.
*Attorney for Plaintiff*
12350 SW 132 Court, Suite 204
Miami, FL 33186
Tel: (305) 358-0000
Fax: (305) 358-1680
Robert@gardanalaw.com
staff@gardanalaw.com

18943/845