UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 17-CV-21537-FAM

KARL M. BROBERG, Individually,
and As Administrator of the Estate of
SAMANTHA JOYCE BROBERG,

    Plaintiff,
vs.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S *DAUBERT*
MOTION TO STRIKE PLAINTIFF'S EXPERTS**

The Plaintiff, KARL M. BROBERG, as Administrator of the Estate of SAMANTHA JOYCE BROBERG, by and through undersigned counsel, hereby responds to Defendant, CARNIVAL CORPORATION's *Daubert* Motion to Strike Plaintiff's Experts [DE 53] and states:

**Introduction**

As is its practice, see *Carideo v. Whet Travel, Inc.*, 2018 WL 1367444, at *1 (S.D. Fla. March 16, 2018) CARNIVAL seeks to "Daubertize" **all** of Plaintiff's six expert witnesses. Attached hereto, as Exhibit A, is a copy of each of their respective reports.

**CARNIVAL's *Daubert* Motion is Largely Moot
Because this Case Will be Tried as a Bench Trial**

This case is currently scheduled for a bench trial to commence during the two week period beginning October 15, 2018. (DE 58). When CARNIVAL's *Daubert* Motion was filed,

1

this matter was still scheduled for a jury trial. However, due to the Plaintiff's concession in his summary judgment response that he cannot meet the necessary requirements for his claim of intentional infliction of emotional distress, he moved for and this Court granted a special set bench trial. CARNIVAL's Motion for Summary Judgment is scheduled to be heard before the Court on May 8, 2018, and thus no order has been entered yet. However, as noted above the Plaintiff does not oppose CARNIVAL's Motion for Summary Judgment as to the Count for intentional infliction of emotional distress. Accordingly, all that remains is a DOHSA claim, which must be tried to the Court in a bench trial.

The Eleventh Circuit has recognized that *Daubert* concerns "are even more relaxed in a bench trial situation, where the judge is serving as fact finder and we are not concerned about 'dumping a barrage of a questionable scientific evidence on a jury.'" *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999)). *See also, Exim Brickell LLC v. Bariven, S.A.*, 2011 WL 13131317 (S.D. Fla. 2011) (citing *Brown*). *See also, McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) ("*Daubert* requires that trial court act as 'gatekeepers' to ensure that speculative, unreliable expert testimony *does not reach the jury*.") (Emphasis added.); *Travelers Property Casualty & Company of America v. Barkley*, 2017 WL 4867012 (S.D. Fla. 2017) (citing, *e.g., McCorvey*, and *Exim*). *See also, Singh v. Caribbean Airlines, Ltd.*, 2014 WL 4101544 (S.D. Fla. 2014) (citing *Cramer v. Sabine Transp. Co.*, 141 F.Supp.2d 727, 733 (S.D. Tex. 2001) (noting, "This is a bench trial, making any motion in limine asinine on its face").

As Judge Altonaga noted in *Singh*, "the rationale underlying pretrial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence." *Id.* at *1. In fact, courts are advised to deny

2

motions in limine in non-jury cases. *See* 9A Charles Allen Wright and Arthur R. Miller, *Federal Practice and Procedures* §2411 (3d Ed. 2008). *Accord Bujarski v. NCL (Bahamas) Ltd.*, 2016 WL 7469997 (S.D. Fla. 2016); *Pavarini Construction Co., Inc. v. G & E Florida Contractors, Inc.*, 2015 WL 11233389 (S.D. Fla. 2015).

### **The Experts Are Not Cumulative**

Accordingly, the Court should deny CARNIVAL's *Daubert* Motion. However, because CARNIVAL also makes certain arguments concerning the alleged cumulative nature of the Plaintiff's witnesses, the Plaintiff offers the following response.

Each of Plaintiff's liability experts serves a different purpose.

Joellen Gill, M.S., CHFP, CXLT, CSP addresses Carnival's shortcomings as a company in failing to implement, evaluate and enforce a proper and effective risk management program.

John A. Cocklin, MBA, CPM addresses the specific failure on the part of Carnival to recognize Samantha Broberg's level of intoxication and continuing to serve her alcoholic beverages.

Michael J. Whitekus, Ph.D., DABT determines with scientific certainty Mrs. Broberg's state of inebriation (BAC) at the time of her fall overboard.

Kyle McAvoy, a former USCG cruise ship inspector, addresses Carnival's method of operation regarding the placement of lounge chairs near the deck railing thereby exposing passengers to the hazard of falling overboard.

Ross A. Klein, Ph.D. will testify as to the general foreseeability of persons falling overboard from cruise ships.

Here is a synopsis of each of their respective opinions.[1]

---

[1] Plaintiff has a sixth expert, Bernard Pettingill, who is an economist. His testimony is clearly not cumulative or overlapping.

3

Joellen Gill is a human factors engineer and safety and risk management expert. Carnival Cruise Line failed to implement and/or enforce a proper and effective safety and risk management program. Carnival Cruise Line was clearly aware of the hazards posed by overserving their guest, and the hazard associated with persons overboard, yet failed to develop and/or implement and also to periodically evaluate an effective safety program so as to protect their passengers and employees alike. Such actions and/or inactions by Carnival Cruise Line were contrary to basic safety and risk management principles and one of the underlying causes of Ms. Broberg's fall and subsequent injuries.

Cocklin is Plaintiff's dram shop and alcoholic beverage regulation expert witness. Cocklin will opine that Carnival Liberty created a dangerous condition when they served alcoholic beverages to Samantha Joyce Broberg, after Broberg exhibited visible signs of intoxication in violation of the standard of care promulgated by Carnival Cruise Lines for identifying and caring for intoxicated passengers; created a dangerous condition when they either failed to recognize the intoxicated state of Samantha Joyce Broberg, or if it was recognized, they failed to follow the standard of care promulgated by Carnival Cruise Lines for identifying and caring for intoxicated passengers; created a dangerous condition by allowing an intoxicated Samantha Joyce Broberg to leave the Promenade Bar without the assistance of a security officer, in violation of Carnival Cruise Lines' procedures for dealing with intoxicated passengers; Carnival Liberty, based upon their standard policies, procedures and training, should have known that the over-service of alcoholic beverages to Samantha Joyce Broberg while she was visibly intoxicated constituted a dangerous condition that was a cause of Broberg's death.

Plaintiff's toxicologist witness, Michael Whitekus, opines, within a reasonable degree of scientific certainty that Broberg's BAC at the time she was served her first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth drink was 0.000%, 0.000%,

0.024%, 0.058%, 0.084%, 0.106%, 0.145%, 0.132%, 0.206%, and 0.250% (respectively); Broberg's BAC at the time of the fall incident was 0.295%; The stage of alcoholic influence and representative clinical signs associated with Broberg's BAC at the time she was served her third drink was subclinical with clinical signs of behavior nearly normal; at the time she was served her fourth and fifth drink her stage of alcoholic influence was euphoria with clinical signs of sociability, increased self-confidence and decreased inhibitions and judgment; at the time she was served her sixth, seventh, eighth and ninth drink her alcoholic stage of influence was excitement with clinical signs of emotional instability, and decreases in perception, memory and comprehension; at the time she was served her tenth and eleventh drink her alcoholic stage of influence was confusion with clinical signs of disorientation, mental confusion, vertigo, exaggerated emotional states, and staggering gate; at the time she was served her twelfth drink her alcoholic stage of influence was stupor with clinical signs approaching loss of motor function, and marked decrease in response to stimuli; The stage of alcoholic influence associated with Broberg's BAC at the time of the fall incident was stupor with clinical signs approaching loss of motor function, marked decrease in response to stimuli, disorientation, mental confusion, balance issues, along with decreased inhibitions and judgment; Broberg was served alcohol while she was visibly intoxicated; Broberg's intoxication due to Carnival Cruise's over-service of alcoholic beverages to her, caused her fall incident.

    Kyle McAvoy is a marine safety expert, a former USCG vessel compliance examiner, who opines that Carnival Liberty's stacking of the lounge chairs in the vicinity of the railing exposed Broberg to the hazard of falling overboard. The combination of hazard and exposure created unreasonably dangerous conditions for Broberg which was a cause of her death; CCL's routine procedure of either allowing, or purposely placing deck lounge chairs adjacent to the

ships outboard open deck railing, deprived Broberg of the protection she needed by industry and regulation which was a cause of her death; CCL knew, or should have known, that intoxicated passengers such as Broberg are at risk of falling overboard at the incident location; CCL failed to adequately monitor the incident area. Had CCL adequately monitored the incident area, Broberg's death would have been prevented. CCL's failure to adequately monitor the incident area was a cause of Broberg's death.

Ross Klein is a cruise industry and tourism expert who has tracked overboard incidents since 2002 and will testify as to the foreseeability of persons falling overboard from cruise ships, within the cruise industry, and specifically to offer expert opinion relating to passenger overboard incidents. He opines that Carnival "has been aware of the problem of persons overboard from its ships; that Carnival gives guests an elevated sense of safety onboard its ships; and that Carnival mispresents the risk of going overboard from a cruise ship. He opines Carnival should be more proactive in preventing person overboard incidents. He believes "the most obvious and simplest method is to communicate to passengers about onboard risks and strategies for maintaining personal safety.  Mr. Klein has twice successfully withstood *Daubert* scrutiny. *See Carideo v. Whet Travel, Inc.*, 2018 WL 1367444 (S.D. Fla. 2018); *Horne v. Carnival Cruise Lines*, Case No. 15-21031 (DE 92) (S.D. Fla. 2016).

In *Marsh v. Celebrity Cruises*, 2017 U.S. Dist. LEXIS 212530 (S.D. Fla. Dec. 13, 2017) the Court denied a similar motion because Celebrity, which like Carnival here, had not deposed any of the experts, merely speculated that the testimony would be cumulative.

## Applying *Daubert*

Although it should not be necessary to rebut CARNIVAL's *Daubert* arguments since this will be a bench trial, in an abundance of caution, we shall do so.  Contrary to CARNIVAL's

argument, *Torres v. Carnival Corp.*, 2014 WL 3548456 (S.D. Fla. 2014), *aff'd*, *Torres v. Carnival Corp.*, 635 Fed.Appx. 595 (11th Cir. 2015) does not apply here. *Torres* was a trip and fall case, which is clearly distinguishable from the present over-service of alcohol (dram shop) case. As the Eleventh Circuit noted, that expert's testimony "regarding walking and the efficacy of different types of warnings can be understood easily and evaluated by jurors." *Id.* at 600.

Indeed, it is curious that CARNIVAL argues that no expert testimony whatsoever is needed in this case on the issue of liability, in light of the fact that CARNIVAL has itself listed experts. Furthermore, here, unlike in *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F.Supp.3d 1120, 1122 (S.D. Fla. 2014), the experts have detailed their experience and how it applies to this case, in their expert reports. If CARNIVAL wished to further delve into their opinions, CARNIVAL could have taken their depositions, but chose not to do so.

When analyzing a *Daubert* motion, the trial court engages in a three part inquiry: (1) whether the expert is qualified to testify competently (expert qualification); (2) whether the methodology used to reach conclusions is sufficiently reliable (methodology); and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue (fit or relevance). *Carideo v. Whet Travel, Inc.*, 2018 WL 1367444 at *8 (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005)). CARNIVAL does not contest the qualifications or reliability factors. Its arguments solely address the fit or relevancy factor.

CARNIVAL's argument that Broberg's experts' testimony on applicable standards will not be helpful to the jury is simply wrong. *See, e.g., Holderbaum v. Carnival Corp.*, 2015 WL 5006071 (S.D. Fla. 2015) ("The SOLAS standards are not common knowledge to the general public, nor are the interpretations of any ambiguous phrases found in them. It is thus the experts role in a situation like this to provide the jury with insight and help as to what these regulations

are, what they mean and how they are applied."). Thus, the Plaintiff's experts' opinions will be helpful to the finder of fact in this case, as the SOLAS standards may not be common knowledge even to Judge Moreno.

CARNIVAL also attacks Mr. Broberg's security opinions as lawyer's advocacy. [DE 53, p. 7]. This attack is wrong, as security opinions can be helpful to a fact-finder. *See, e.g. Carideo, supra.* In any event, Judge Moreno will certainly be able to separate the wheat from the chaff in this bench trial. CARNIVAL also assails the experts' opinions because they rely *inter alia* upon the sworn testimony in this case. But these are precisely the types of facts upon which experts are permitted to testify under *Daubert*. *See, e.g. Burroughs vs. Mackie Moving Systems, Corp.*, 2010 WL 1254630 (E.D. Mo. 2010) (expert relied upon facts from accident report, telephone interview with three witnesses, and depositions taken in the case).

Mr. Broberg's experts fully comply with Federal Rule of Evidence 702 in that their experience is particularly tied to their opinions, and the basis for those opinions is more than adequately explained. Thus, unlike the experts for both sides in *Birge ex rel Mickens v. Dollar Gen. Corp.*, 2006 WL 5175758 (W.D. Tenn. 2006) all of the Plaintiff's expert opinions are specifically tied to the evidence in the case, and to industry standards.

Even non-mandatory industry guidelines and provisions are relevant for determining the standard of care for cruise lines implementing security measures, and it is appropriate for Plaintiff's experts to rely upon them. *See Holderbaum v. Carnival Corp.*, 2015 WL 5006071 at *5 (S.D. Fla. 2015) citing *Cook v. Royal Caribbean Cruises, Ltd.*, 2012 WL 1792628 at *3 (S.D. Fla. 2012) ("district court judges in the Eleventh Circuit have followed the rule that failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted . . . Fore's testimony applies various regulations and guidelines (that may or

8

may not be binding; that is not the issue being decided in this motion) to the facts of the conditions at the location where Holderbaum fell. In a broad sense, there is nothing inappropriate about following this methodology."). *See also, Sofillas v. Carnival Corp.*, 2016 WL 5416136 at *4 (S.D. Fla. 2016); *Darville v. Rhaming Shipping, Ltd.*, 1987 WL 48393 at *10 (S.D. Fla. 1982) (Marcus, J.) (Failure to follow non-mandatory rules is admissible to show how a reasonable person might have acted).

### Experience Based Expert Testimony is Permissible

CARNIVAL attacks Plaintiff's experts as being primarily experience-based. Although that is not true, the Advisory Committee Notes for Rule 702 provide, with respect to witnesses such as Dr. Klein that:

> Nothing in this amendment is intended to suggest that experience alone - or experience in conjunction with other knowledge, skill, training or education — may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.
> \*\*\*
> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts . . .

Fed. R. Evid. 702 *Advisory Committee Notes* (2000 Amendment). *See Carideo, supra.* at *8. The Plaintiff's experts set forth their experience, the sufficiency of that experience and how it is reasonably applied to the facts in this case. *See also, Galarza v. Carnival Corp.*, 2016 WL 7507883 at *1 (S.D. Fla. 2016) ("experts may be qualified in various ways, such as scientific training or education and experience in the field").

A witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist the trier of fact. *Whelan v. RCCL*, 976 F.Supp.2d 1328, 1331 (S.D. Fla. 2013). This is a negligent security

9

action, not a complex pharmaceutical product liability action where the theory of medical causation is unsupported. *Cf. In re Denture Cream Products Liability Litigation*, 2015 WL 392021 (S.D. Fla. 2015). "In considering the pending *Daubert* motions, the Court keeps in mind the substantive law applicable to Plaintiff's claims." *Schenone v. Zimmer Holdings, Inc.*, 2014 WL 9879924 (M.D. Fla. 2014).

**Helpfulness**

Typically, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. *U.S. vs. Frazer*, 387 F.3d 2044, 2062 (11th Circ. 2004). In this case, the applicable industry standards for the provision of security are beyond the understanding of the average lay person. *See, e.g., Holderbaum v. Carnival Corp.*, 2015 WL 5006071 at *10 (S.D. Fla. 2015) (Goodman, J.) (explaining why expert testimony regarding SOLAS Convention and guidelines may be helpful to the jury). Indeed, Carnival has previously retained security experts of its own to offer similar, albeit opposing, opinions. See Carnival's Response to Plaintiff's *Daubert* motion in *Berner v. Carnival Corp.*, Case No. 08-22569 [DE 85-1] Likewise, although jurors certainly understand that drinking alcohol has an effect upon a person's motor skills, they do not understand precisely how much alcohol can be metabolized, and cannot make an accurate assessment of whether CARNIVAL's bartenders should have refused to serve Ms. Broberg more alcohol without knowing how much alcohol was in her system at various times when she was served.

Next, CARNIVAL asserts that the experts are impermissibly relying upon one another, citing *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569 (11th Cir. 1985). But, as Judge Scola recently noted, *American Key* "is not a categorical rule." *Sofillas v. Carnival Corp.*, 2016 WL 5406889 (S.D. Fla. 2016). Instead, "the facts and data upon which an expert may rely

in reaching expert opinion includes the opinions and findings of other experts, if experts in their respect field would reasonably rely on other expert's opinions and findings." *Id.* (quoting *In re Wright Med. Tech. Inc.*, 127 F.Supp.3d 1306, 1320 (N.D. Ga. 2015).  As Judge Scola put it:

> In other words, an expert cannot blindly rely or ratify another expert's opinion, but the expert may review and interpret another expert's opinion in forming his own conclusions so long as that is the normal practice in his field.

*Sofillas*, at *4.  Additionally, experts may rely on the facts and data collected by other experts. *Id.* (citing *Eberli v. Cirrus Design Corp.*, 615 F.Supp.2d 1357, 1364 (S.D. Fla. 2009) (Ungaro, J.).  *See also, MasForce Europe, BVBA v. Mastry Marine & Indus. Design, Inc.*, 2013 WL 8148666, at *4-5 (M.D. Fla. 2013) (finding expert testimony admissible when the expert analyzed another expert's data and formed his own conclusion).

Next, CARNIVAL attacks McAvoy's opinion concerning placing the deck chairs adjacent to the railings as "ridiculous." (DE 53, p. 8).  CARNIVAL does not identify where in the *Daubert* analysis such accusations are best analyzed.  CARNIVAL suggests that this testimony applies inapplicable or nonexistent industry standards.  To the contrary, it merely applies the *Kermerac* standard of reasonable care under the circumstances to the facts of the case.

CARNIVAL also suggests that Dr. Whitekus' testimony on what CARNIVAL refers to as Samantha Broberg's "theoretical" BAC, is pure speculation.  To the contrary, Dr. Whitekus explained in significant detail how he used Samantha Broberg's height and weight, and the amount of alcohol in the various drinks which were served to her, to come to his quite clearly scientific and *Daubert*-worthy opinion on blood alcohol content.  Indeed, the only "toxicology" opinion in this case which is speculative is that of CARNIVAL's purported expert Elizabeth Trendowski.  (See DE 51).  Notwithstanding the fact that this case will be conducted as a bench

11

trial, Ms. Trendowski's opinions are entirely unsupported *ipse dixit*.

### Bernard F. Pettingill, Jr., Ph.D.'s Expert Opinions Should Not Be Stricken

Once again, CARNIVAL moves to strike a witness whose deposition it has not taken. This motion should be deferred to the bench trial where Judge Moreno can rule upon the actual proposed testimony of Dr. Pettingill, not CARNIVAL's misinterpretation of his proposed testimony.

Respectfully submitted,

**PHILIP D. PARRISH, P.A.**
*Co-counsel for Plaintiff*
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Telephone: (305) 670-5550
Facsimile: (305) 670-5552
Email: phil@parrishappeals.com
   betty@parrishappeals.com

By: */s/ Philip D. Parrish*
   Philip D. Parrish, Esq.
   Florida Bar No. 0541877

**ROBERT L. GARDANA, P.A.**
*Counsel for Plaintiff*
12350 SW 132 Court, Suite 204
Miami, FL 33186
Tel: (305) 358-0000
Fax: (305) 358-1680
Email: Robert@gardanalaw.com
   Staff@gardanalaw.com

By: */s/ Robert L. Gardana*
   Robert L. Gardana, Esq.
   Florida Bar No. 279668

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

served this day on all counsel of record, or pro se parties, identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   */s/ **Philip D. Parrish***
　　　　Philip D. Parrish (541877)

### ATTORNEY SERVICE LIST

**KARL M. BROBERG, et. al. vs. CARNIVAL**
**CASE NO: 17-CV-21537-FAM**

Robert L. Gardana, Esq.
ROBERT L. GARDANA, P.A.
Attorney for Plaintiff
12350 SW 132 Court, Suite 204
Miami, FL 33186
Tel: (305) 358-0000
Fax: (305) 358-1680
Email: Robert@gardanalaw.com
　　　　staff@gardanalaw.com

Philip D. Parrish, Esq.
PHILIP D. PARRISH, P.A.
Co-counsel for Plaintiff
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Telephone: (305) 670-5550
Facsimile: (305) 670- 5552
Email: phil@parrishappeals.com
　　　　betty@parrishappeals.com

CURTIS J. MASE, ESQ
cmase@maselaw.com
kfehr@maselaw.com
SCOTT P. MEBANE, ESQ
smebane@maselaw.com
ctoth@maselaw.com
CAMERON EUBANKS, ESQ.
ceubanks@maselaw.com
rcoackley@maselaw.com
filing@maselaw.com
MASE TINELLI MEBANE & BRIGGS P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080