UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-21537-MORENO/LOUIS

KARL M. BROBERG,

   Plaintiff,

vs.

CARNIVAL CORPORATION,

   Defendant.

_____/

**REPORT AND RECOMMENDATION**

This cause came before the Court upon the following motions: (1) Plaintiff's *Daubert* Motion to Strike Carnival's Experts Trendowski and Padron (ECF No. 51); (2) Plaintiff's Omnibus Motions *in Limine* (ECF No. 52); and (3) Defendant's *Daubert* Motion to Strike Plaintiff's Experts (ECF No. 53). These motions were referred to the Undersigned magistrate judge by the Honorable Federico A. Moreno, United States District Judge, on April 6, 2018, for a report and recommendation (ECF No. 55). A hearing was held before the Undersigned on June 5, 2018, on all three motions. Upon review of the briefing, the relevant discovery, and the pertinent parts of the record, the Court makes the following Report and Recommendation on each motion.

I.   BACKGROUND

On April 25, 2017, Plaintiff Karl Broberg, individually and as administrator of the estate of his deceased wife, Samantha Broberg, filed a complaint against Defendant Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival") in the Southern District of Florida (ECF No. 1). The case arises out of the death of Mrs. Broberg, who was a passenger onboard one of Carnival's cruise ships on May 12, 2016. According to the allegations, on the early morning of

1

May 13, 2016, a heavily intoxicated Mrs. Broberg stepped onto one of the cruise ship's exterior lounge chair, sat on the railing of the ship, and fell overboard into the Gulf of Mexico. In his complaint, Plaintiff pled one count of negligence under the Death on the High Seas Act based upon Defendant's (1) excessive service of alcohol, (2) failure to detect and report Mrs. Broberg's fall overboard, and (3) failure to initiate a prompt search and rescue operation; and one count for intentional infliction of emotional distress.

On February 23, 2018, Defendant moved for partial summary judgment (ECF No. 42). On May 16, 2018, Judge Moreno granted Defendant's motion for summary judgment in part, dismissing the majority of Plaintiff's claims and leaving the only remaining issue for trial the alleged negligent service of alcohol (ECF No. 78).

The present motions before the Court were filed on April 2, 2018. Shortly thereafter, Plaintiff filed an unopposed motion for a specially-set bench trial of this case (ECF No. 57). Judge Moreno granted this motion on April 20, 2018 (ECF No. 58), and set a bench trial for October 15, 2018.

In their respective responses and replies, which were filed after the bench trial setting, both parties advanced authority for the proposition that there is a relaxed process in a bench trial for *Daubert* motions and motions *in limine* because of the lack of a jury. *See, e.g., Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-61768-CIV, 2017 WL 4867012, at *1 (S.D. Fla. June 2, 2017); *Bujarski v. NCL (Bahamas) Ltd.*, No. 1:15-CV-21066-UU, 2016 WL 7469997, at *1 (S.D. Fla. Jan. 7, 2016). Notwithstanding, courts may still go through the individual analyses of the experts or motions, and have granted these motions to strike prior to the bench trial. *See Exim Brickell LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131317 (S.D. Fla. Mar. 11, 2011);

*Goldberg v. Paris Hilton Ent't, Inc.*, No. 08-22261CIV, 2009 WL 1393416, at *4 (S.D. Fla. May 18, 2009).

The Undersigned takes note of the case law, and also recognizes that there is only one triable issue before Judge Moreno – negligence from excessive service of alcohol – and functionally one affirmative defense – comparative negligence. With that context, the Court analyzes each proffered expert witness and motion *in limine* individually and presents its recommendations thereof.

## II.  LEGAL STANDARD

A motion *in limine* seeks to exclude evidence prior to trial. A *Daubert* motion is a specific type of motion *in limine*, referring to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), where the Court held that the trial court must serve as a "gatekeeper" of expert witnesses to ensure that their testimony is both reliable and relevant. Federal Rule of Evidence 702, amended in 2000 in response to the *Daubert* decision, states that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

The Eleventh Circuit has required the trial court to conduct a "rigorous three-part inquiry" under Rule 702, considering whether: (1) the expert is qualified to testify competently regarding the matter she intends to address ("qualification"); (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* ("reliability"); and (3) the testimony assist the trier of fact, through the

application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue ("helpfulness"). *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

### III.   ANALYSIS

#### A.   Plaintiff's *Daubert* Motions (ECF No. 51)

Plaintiff challenged the expert report and testimony of Elizabeth Trendowski, Defendant's dram shop and alcohol service expert. Plaintiff also moved to strike Oscar Padron, a C.P.A., but later withdrew his challenge after Defendant noticed that it would not be calling Padron as a witness at trial, thus rendering this portion of the motion moot. Accordingly, the Court will solely analyze the motion to strike Trendowski as an expert.

##### 1.   Elizabeth Trendowski

Trendowski is proffered to be a dram shop and alcohol service expert. Defendant seeks to present Trendowski's expert testimony to show that Carnival participated in a responsible alcohol service program that met or exceeded industry standard. The stated purpose of her report was "to determine whether Defendant provided reasonable alcohol server training to its service staff and whether the policies and procedures provided for safe service of alcohol and if such policies and procedures were within the industry standard of care for responsible service of alcohol." Trendowski Expert Report at 1 (ECF 51-3). However, Plaintiff's counsel represented, in response to the Court's questioning at the hearing, that it would not present evidence or argument that Defendant did not provide reasonable alcohol server training to it service staff; that Defendant's policies and procedures did not provide for safe service of alcohol; or that its policies and procedures were not in the industry standard of care for responsible service of alcohol. In response, defense counsel conceded that absent any such argument or evidence, he

4

would not need to call Trendowski at trial, thereby acknowledging the lack of helpfulness of this proffered expert. Therefore, the Court finds that Trendowski would not be helpful to the finder of fact, and recommends that Plaintiff's *Daubert* motion be GRANTED with respect to Elizabeth Trendowski.

### B. Defendant's *Daubert* Motions (ECF No. 53)

Defendant challenged the expert report and testimony of six of Plaintiff's witnesses: (1) Joellen Gill, a human factors engineer and safety/risk management expert; (2) John Cocklin, a dram shop and alcoholic beverage regulation expert; (3) Michael Whitekus, a toxicologist and drug safety expert; (4) Kyle McAvoy, a marine safety expert; (5) Ross Klein, a cruise industry and tourism expert; and (6) Bernard Pettingill, an economist.

Prior to the hearing, Plaintiff notified Defendant and the Court of its intention to withdraw Gill and McAvoy as witnesses, and Defendant acknowledged that Plaintiff's notice rendered these motions moot. The Court makes the following findings and recommendations as to Cocklin, Whitekus, Klein, and Pettingill only.

#### 1. John Cocklin

Cocklin is a dram shop and alcohol beverage regulation expert witness. His report entails an analysis of the events that took place on the day of the incident and why Carnival should have been on notice that Mrs. Broberg was visibly intoxicated. However, the Court finds that Cocklin's report is exclusively reliant on other evidence in discovery, particularly Carnival's manual of alcohol policies and a photograph of Mrs. Broberg at the bar shortly before her death. Plaintiff argued that Cocklin can assist the Court in pointing to Defendant's policies that are most pertinent to the case, and explaining these policies, which are codified in written manuals. The Court does not believe that the manuals and alcohol procedures are so complicated that the

finder of fact will benefit from Cocklin's testimony. Because none of the opinions disclosed by Cocklin would be helpful for the proffered purposes, the Court recommends that Defendant's *Daubert* motion be GRANTED with respect to John Cocklin.

### 2. Michael Whitekus

Whitekus is a toxicologist and drug safety expert. His report opines on the level of intoxication and blood alcohol content of Mrs. Broberg with each of the 19 alcoholic beverages she consumed over the approximately 13 hour period she was on the cruise ship. He also notes the representative clinical signs of behavior associated with each level of intoxication, concluding with her probable blood alcohol content ("BAC") level at the time of her fall overboard. Defendant offers no challenge to Whitekus's qualifications and conceded to his reliability at the hearing, but argues that his testimony would not be helpful for the factfinder. However, the Court finds that Whitekus offers unique testimony as to Mrs. Broberg's BAC at the various times during the events leading up to her fall overboard and an opinion on the attendant physiological manifestations of that BAC level. The contested issue in this case turns on whether Defendant's agents should have recognized Mrs. Broberg's dangerous condition (intoxication), and the fact that Mrs. Broberg's body was never found makes Whitekus's methodology for determining BAC helpful to the ultimate finding of Carnival's potential negligence. Therefore, the Court recommends that Defendant's *Daubert* motion be DENIED with respect to Michael Whitekus.

### 3. Ross Klein

Ross Klein is a sociologist who studies cruise ship tourism and industry. His report finds, among other things, that Carnival has more persons-overboard events than other cruise line, and that alcohol was involved in a significant number of those events based on his statistical analysis

of compiled data. Specifically, Klein states in his report that "based on available data, … a person going overboard from a [Carnival] ship is twice as likely as the industry average to have had alcohol play a role" and includes a table of the corresponding statistics. Klein Expert Report at 13, 15 (ECF No. 53-1, at 124, 126). Plaintiff contends that Klein's expert testimony goes to the foreseeability of incidents like Mrs. Broberg's death due to the over-service of alcohol, which no other witness can testify to. Defendant argues that Klein's testimony is speculative, noting that another likely reason for Carnival's high number of persons-overboard may be explained by the fact that Carnival has the largest market share of cruise lines.

The Court notes that Klein has withstood *Daubert* scrutiny in other similar cases in this district. In *Carideo v. Whet Travel, Inc.*, No. 16-23658-CIV, 2018 WL 1367444 (S.D. Fla. Mar. 16, 2018), the plaintiff was a passenger aboard a Carnival cruise who was assaulted by other passengers who were intoxicated. The plaintiff called Klein as an expert witness, who the defendant challenged under *Daubert*. Magistrate Judge Jonathan Goodman denied the defendant's motion, but limited Klein's testimony to several narrow topics, including his opinion that it was foreseeable for the assault to happen, that it was correlated to intoxication, and that the specific ship was characterized by high alcohol consumption and drug use.

Similarly, the Undersigned finds that Klein is qualified to testify under *Daubert*, but that his expert testimony should be limited. While his expert report contains opinions that would not be helpful to this case,[1] his opinions on the foreseeability of falling overboard as it correlates to

---

[1] Klein's report proffers eight different opinions: "(A) That Carnival Cruise Lines has been aware of the problem of persons overboard from its ships; (B) That Carnival Cruise Lines has failed in using available data to conduct a social epidemiological analysis of cases of persons overboard with the goal of targeted and specific strategies for preventing incidents in future; (C) That guests are given an elevated sense of safety aboard Carnival Cruise Lines' cruises by its website, and by lack of publication of incidents of persons overboard through its website; (D) That Carnival Cruise Lines, and the Cruise Lines International Association (and its predecessor the International Council of Cruise Lines) as a representative of Carnival Cruise Lines and other cruise lines, has consistently and systematically misrepresented the risk of going overboard from a cruise ship; (E) That the disappearance of Ms. Broberg was foreseeable given past incidents of persons overboard; (F) That the system recording the official record

the overconsumption of alcohol is relevant and would be helpful to the trier of fact. Accordingly, the Undersigned recommends that Defendant's *Daubert* motion be DENIED with respect to Ross Klein, insofar as Klein should be permitted to testify about the data compiled in Table 3 on page 15 of his report and related opinions on the foreseeability of Mrs. Broberg's accident.

### 4. Bernard Pettingill

Bernard Pettingill is a consulting forensic economist. His expert report opines on the present value of future loss of support and household services for Mrs. Broberg. Defendant takes issue with Pettingill's methodology and, specifically, the calculation of damages based on Mrs. Broberg's employment with the family-owned company TBD Training Facilities, LLC. Defendant argued at the hearing, as it did at summary judgment, that Plaintiff cannot recover damages related to his wife's loss of income because he is the principal owner of the business where Mrs. Broberg was employed, and that after her death, the position was simply absorbed into the company. This, Defendant contends, negates a damage calculation based on lost income, as the family has not truly lost the income. In response, Plaintiff represents that the position in the company has since been filled by two new employees. This is new information, since Mr. Broberg's deposition was taken last year, and both parties sought leave to depose Mr. Broberg for the limited purpose of questioning him on the subject matter.[2] On the present record, which as noted in the Order on summary judgment is insufficient to conclude that the Decedent's lost

---

relies on employees of the cruise line and consequently there may be disincentives to accurately report a person overboard incident; (G) That Carnival Cruise Lines should be more pro-active in preventing person overboard incidents; (H) That Carnival Cruise Lines and CLIA have an obligation to disclose reliable, independently-verifiable data on person overboard incidents on its ships." Klein Expert Report at 8-9 (ECF No. 53-1, at 119-120).

The Court does not find that Opinions C, D, F, G, or H would helpful to the trier of fact. The Court finds that Opinions A, B, and E are helpful only on the narrow topic of foreseeability with respect to alcohol consumption.

[2] The Parties were instructed that if leave were to be granted, it would necessitate first the filing of a written motion and identification of the proposed date for such a deposition.

income is not a cognizable loss to Plaintiff, the Court recommends that Defendant's *Daubert* motion be DENIED without prejudice with respect to Bernard Pettingill.

### C.   Plaintiff's Motions *in Limine* (ECF No. 52)

In his omnibus motion, Plaintiff seeks to exclude any evidence, commentary, or speculation on the following subject matters: (1) use or possession of prescription medications by Mrs. Broberg; (2) testimony concerning Mrs. Broberg's alleged sexual encounter with another passenger; (3) prior psychiatric history of Mrs. Broberg relating to depression or suicide; (4) prior alcohol abuse by Mrs. Broberg; (5) Mr. Broberg's prior marriages; (6) Mr. Broberg's current relationship; (7) the relative wealth of the parties; (8) Mr. Broberg's comment that his Mrs. Broberg was "a girl who just liked to shop;" (9) Mr. Broberg's mental or psychiatric condition; and (10) any double hearsay testimony.

The parties informed the Court at the hearing that they had reached agreement with respect to motions *in limine* Nos. 3, 5, 6, 7, 8, and 9, and the Court recommends denying those motions as moot.

#### 1.   Prescription Medication (Motion *in limine* No. 1)

Plaintiff seeks to exclude "any evidence of or comments with respect to speculative use of or possession of prescription medications," referencing prescription medications that were found within a safe in Mrs. Broberg's cabin. ECF No. 52 at 1. Defendant argues that such evidence is clearly relevant and highly probative due to the potential effects of mixing alcohol with prescription drugs. Defendant relies on the case of *Doe v. NCL (Bahamas), Ltd.*, 2012 WL 5512314, *4 (S.D. Fla. Nov. 14, 2012) for the proposition that the evidence of prescription drugs mixed with alcohol is relevant to the issue of Plaintiff's relative impairment due to service of alcohol. However, *Doe* is distinguishable, as there was record evidence that the plaintiff there

9

had taken Vicodin prior to consumption of alcohol. By contrast, there is no evidence that Mrs. Broberg consumed any prescription drugs, much less evidence that she did so within a relevant period of time before her accident. Accordingly, the Court recommends that Plaintiff's motion *in limine* No. 1 be GRANTED.

### 2. Alleged Sexual Encounter (Motion *in limine* No. 2)

Plaintiff moves to exclude "any testimony concerning or reference to Samantha Broberg's alleged sexual encounter with another passenger." ECF No. 52 at 2. The only indication in the record of such evidence is the account of one of Carnival's security officers, who reported what he was told by another passenger. Defense counsel conceded the absence of any exception of the hearsay rule by which the statement of the passenger to the officer could be admissible. In the absence of any competent evidence of the alleged sexual encounter, the motion *in limine* is due to be granted. Moreover, the Undersigned has considered the proffered evidence and relevance thereof, and further recommends an order granting this motion *in limine*.

Defendant proposes that because Plaintiff has placed the Decedent's state of mind at issue in this case, any evidence regarding Plaintiff's actions leading up to her fall are relevant to determine whether or not she was intoxicated. More specifically, Defendant claims that Mrs. Broberg having an affair makes it more likely that she was not intoxicated because she had her wits about her. The Court disagrees that evidence of a sexual encounter makes it more likely that Mrs. Broberg, a married mother of four, had her mental acumen about her; indeed, counsel for Defendant acknowledged that it could just as easily prove the opposite.

Defendant also argues that because the Court will consider Mrs. Broberg's character in determining what damages to award to her surviving children, evidence of her alleged sexual promiscuity is relevant. The cases cited in Defendant's opposition for the proposition that

10

evidence of infidelity is relevant to impeach a decedent's "character" provided no such support, which defense counsel acknowledged at the hearing.[3]

Because there is neither competent evidence of, nor relevant basis for the admission of, an alleged sexual tryst by Mrs. Broberg, the Court recommends that Plaintiff's motion *in limine* No. 2 be GRANTED.

### 3. Prior Alcohol Abuse (Motion *in limine* No. 4)

Plaintiff moves to exclude "any commentary or testimony concerning alleged prior alcohol abuse without proper foundation and/or appropriate expert or treating physician testimony." ECF No. 52 at 3. Plaintiff denies that there is any evidence of Mrs. Broberg abusing alcohol. Defendant advanced the deposition testimony of Mr. Broberg, who testified that Mrs. Broberg had been drinking daily before he asked her at some point to reduce her consumption. Defendant contends that such evidence is highly relevant and probative to the question of Mrs. Broberg's condition at the time in dispute because a high alcohol tolerance may cause Mrs. Broberg to handle the alcohol she was served and exhibit fewer signs of inebriation. The Court agrees. Evidence of prior alcohol use is both relevant and probative to Mrs. Broberg's level of intoxication on the date of the incident and her exhibition of the same. Accordingly, the Court recommends that Plaintiff's motion *in limine* No. 4 be DENIED.

### 4. Double Hearsay (Motion *in limine* No. 10)

Plaintiff moves to exclude "any double hearsay testimony," specifically identifying a statement made by Marilyn Mazon, a bartender, who told Carnival Security Officer Sanjay Kumar that Mrs. Broberg did not appear to be intoxicated when Mazon served her another drink

---

[3] *See, e.g, Solomon v. Warren*, 540 F.2d 777, 788-89 (5th Cir. 1976) (no reference to negative character traits in considering loss of support damages); *Matter of Adventure Bound Sports, Inc.*, 858 F. Supp. 1192, 1207 (S.D. Ga. 1994) (same); *Ainsworth v. Caillou Island Towing Co., Inc.*, 2013 WL 6186443, at *3 (E.D. La. 2013) (same); *McKee v. Colt Elec. Co., Inc.*, 849 F.2d 46, 52 (2d Cir. 1988) (same).

11

around midnight. ECF No. 52 at 5. This is patently hearsay within hearsay to which no exception has been advanced. At the hearing, Defendant acknowledged that he could not advance Mazon's hearsay statement through Kumar and that if Defendant intended to advance the statement, it would have to call Mazon. The Court agrees and recommends that Plaintiff's motion *in limine* No. 10 be GRANTED.

**IV.   RECOMMENDATION**

For the foregoing reasons, it is hereby RECOMMENDED as follows:

1. Plaintiff's *Daubert* Motion should be GRANTED as to Elizabeth Trendowski.

2. Defendant's *Daubert* Motion should be GRANTED as to John Cocklin; and DENIED as to Michael Whitekus and Bernard Pettingill. Defendant's motion should also be DENIED in part and GRANTED in part as to Ross Klein, with his testimony limited to the narrow topic of foreseeability of persons overboard and the correlation to alcohol consumption.

3. Plaintiff's Omnibus Motions *in Limine* should be GRANTED as to Motions Nos. 1, 2, and 10; and DENIED as to Motion No. 4.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *R.T.C. v. Hallmark Builders*, *Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE and ORDERED in chambers at Miami, Florida this 11th day of June, 2018.

_____

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE